TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00191-CR







Jabri J. McCullough, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 45,753, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING







PER CURIAM


 A jury found appellant guilty of capital murder. Tex. Penal Code Ann. § 19.03(a)(2) (West
1994). The State having waived the death penalty, the district court assessed punishment at imprisonment
for life. Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 1996).

 Appellant was one of a group of young men gathered at Rebecca Martin's residence on
South 7th Street in Temple on the night of June 22, 1995. Among the others present were Vinson Favers,
Carniell McDaniel, and Reginald Scott. Appellant had a .38 caliber semiautomatic pistol. The pistol
contained two bullets given to appellant by Favers. Appellant, Favers, and McDaniel decided to walk to
a grocery store. On their way, they encountered a woman later identified as Mary Ellen Hendricks. Favers
testified that appellant told his companions that the woman "looked like somebody he could jack." Favers
said "jack" meant "rob." Appellant seized Hendricks, pointed the pistol at her head, and demanded her
purse. When Hendricks screamed, appellant shot her in the head. Appellant returned to Favers and
McDaniel, telling them "that's the way you kill somebody." Appellant also told them he would do the same
to them if they told anyone what they had seen.

 The police had no suspect in this case until August 10. On that date, Scott, who was in
jail for another offense, gave a statement to Temple police officer Wayne Corley. Corley testified that the
information given to him by Scott led him to believe that appellant killed Hendricks. The prosecutor asked
Corley the source of Scott's information. Over objection, Corley testified that Scott's "source of
information was . . . verbal admissions that he had been told by [appellant] of what had occurred that night." 
In his first point of error, appellant contends this testimony was inadmissible hearsay.

 The State replies that the testimony was not hearsay because it was not offered to prove
the truth of the matter stated. Tex. R. Crim. Evid. 801(d). We do not decide this, since we find that the
admission of the testimony, if error, was harmless beyond a reasonable doubt. Tex. R. App. P. 81(b)(2). 
Scott himself testified that appellant told him he shot a woman in the head near the grocery store. Martin
also testified that she heard appellant admit committing the murder. Under the circumstances, Corley's
testimony that appellant admitted the shooting to Scott told the jury nothing it did not hear, without
objection, from other witnesses. Point of error one is overruled.

 Appellant's next contention is that the district court erroneously sustained the State's
objection to a question posed by defense counsel during his cross-examination of Corley. Counsel asked,
"[P]eople that have knowledge of such a crime are considered co-conspirators, are they not?" The
prosecutor successfully objected that the question was "a misstatement of the law." Appellant argues that
the question "may not have been 100% correct, [but] it was not 100% incorrect either." He asserts that
by sustaining the objection, the court "direct[ed] the attention of the jury away from" appellant's defensive
theory that others "may have been co-conspirators or the perpetrators of the offense."

 This point of error was not preserved because the record does not reflect what the
witness's answer to the question would have been. Green v. State, 840 S.W.2d 394, 407 (Tex. Crim.
App. 1992); Tex. R. Crim. Evid. 103(a)(2). In any event, Corley had previously acknowledged in
response to cross-examination that guilty persons sometimes give statements to the police seeking to divert
attention to someone else. This was the point counsel was attempting to make by asking the disallowed
question. Point of error two is overruled.

 Appellant's third and fourth points of error concern the State's questioning of Scott. Scott
testified that he spoke to Favers and McDaniel on the morning after Hendricks was killed. He related that
they were "scared and excited" and they told him "not to tell . . . what they had told me." The prosecutor
asked, "Did they say why?" Appellant's hearsay objection was overruled and Scott answered, "[Appellant]
had told them not to tell anybody." The prosecutor then asked, "Were they afraid of him?" After Scott
answered, "I don't know," appellant objected that the question called for speculation. The court sustained
the objection and instructed the jury to disregard the witness's answer. A motion for mistrial was overruled.

 In light of Faver's testimony that appellant threatened to kill him and McDaniel if they told
anyone what they witnessed, the admission of Scott's alleged hearsay testimony to the same effect was
harmless error at most. Because Scott said he did not know if Favers and McDaniel were afraid of
appellant, no speculative evidence was admitted and the court's instruction to disregard was sufficient to
cure any residual error. The court did not abuse its discretion by overruling the motion for mistrial. Points
of error three and four are overruled.

 Appellant twice requested a mistrial during Martin's testimony. When Martin said that
appellant "brags about jumping on people having --," appellant's objection that the witness was being
unresponsive and "going into extraneous material" was sustained and the jury was instructed to disregard. 
Later, Martin testified that her four-year-old son saw appellant hide a gun in the back yard. Appellant
objected that this was hearsay because Martin was testifying to what she was told by her son. The
objection was sustained and the jury was instructed to disregard "the comment as to what her little son told
the witness." In each instance, a motion for mistrial was overruled.

 We believe the instruction to disregard was sufficient to cure any harm resulting from the
witness's first, uncompleted statement, and that appellant's motion for mistrial was properly overruled. We
reach the same conclusion regarding the second statement. We also note that immediately after the second
motion for mistrial was overruled, Martin testified without further objection that, based on what she was
told by her son, she went into the back yard and found a gun she had earlier seen in appellant's possession. 
Points of error five and six are overruled.

 Finally, appellant complains that the district court did not properly limit the definition of
"intentionally" in its jury charge. The court instructed the jury, "A person acts intentionally, or with intent,
with respect to the nature of his conduct or as [sic] a result of his conduct when it is his conscious objective
or desire to engage in the conduct or cause the result." (1) Appellant urges that murder is a "result of conduct"
offense and that the portion of the definition relating to "nature of conduct" should have been omitted.

 Appellant was not on trial for murder, but for capital murder. Depending on the precise
allegations of the indictment, a capital murder prosecution can include all three "conduct elements." Patrick
v. State, 906 S.W.2d 481, 491-92 (Tex. Crim. App. 1995). Determining which conduct element or
elements apply in any given case is no simple task. See Cook v. State, 884 S.W.2d 485, 492-94 (Tex.
Crim. App. 1994) (Maloney, J., concurring); and see Patrick v. State, 906 S.W.2d 481, 491-92 (Tex.
Civ. App. 1995) (alleged capital murder offense contained all three conduct elements, but certain definitions
should have been limited to underlying felony). Rather than prolong this opinion by analyzing the various
conduct elements of murder and robbery, we will assume that the district court erred by failing to delete
the "nature of conduct" language from its definition of intentional conduct.

 Because appellant objected to the charge error, reversal is required if the error caused him
some harm. Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion on rehearing). 
In assessing the harm, if any, resulting from the inclusion of an improper conduct element in the definition
of a culpable mental state, we must consider the application portion of the charge. Hughes v. State, 897
S.W.2d 285, 296 (Tex. Crim. App. 1994). In the application paragraph of the court's charge in this cause,
the jury was instructed that it could convict appellant of capital murder only if it found beyond a reasonable
doubt that he "intentionally cause[d] the death" of Hendricks and that he "intentionally cause[d] the death"
of Hendricks in the course of committing or attempting to commit robbery. Because the term "intentionally"
twice directly modified the phrase "cause the death" in the application paragraph, it was obvious that the
"result of conduct" component of the code definition of "intentionally" applied. We therefore conclude that
including the "nature of conduct" component in the definition did not harm appellant. Id. Point of error
seven is overruled.

 The judgment of conviction is affirmed.


Before Justices Powers, Aboussie and Jones

Affirmed

Filed: October 9, 1996

Do Not Publish

1.   This instruction tracks the Penal Code definition of intentional conduct. Tex. Penal Code
Ann. § 6.03(a) (West 1994). The court's charge also included the complete statutory definitions
of knowing and reckless conduct. Id. § 6.03(b), (c). Appellant did not object to the latter definitions
and does not complain of them on appeal.


ng on people having --," appellant's objection that the witness was being
unresponsive and "going into extraneous material" was sustained and the jury was instructed to disregard. 
Later, Martin testified that her four-year-old son saw appellant hide a gun in the back yard. Appellant
objected that this was hearsay because Martin was testifying to what she was told by her son. The
objection was sustained and the jury was instructed to disregard "the comment as to what her little son told
the witness." In each instance, a motion for mistrial was overruled.

 We believe the instruction to disregard was sufficient to cure any harm resulting from the
witness's first, uncompleted statement, and that appellant's motion for mistrial was properly overruled. We
reach the same conclusion regarding the second statement. We also note that immediately after the second
motion for mistrial was overruled, Martin testified without further objection that, based on what she was
told by her son, she went into the back yard and found a gun she had earlier seen in appellant's possession. 
Points of error five and six are overruled.

 Finally, appellant complains that the district court did not properly limit the definition of
"intentionally" in its jury charge. The court instructed the jury, "A person acts intentionally, or with intent,
with respect to the nature of his conduct or as [sic] a result of his conduct when it is his conscious objective
or desire to engage in the conduct or cause the result." (1) Appellant urges that murder is a "result of conduct"
offense and that the portion of the definition relating to "nature of conduct" should have been omitted.

 Appellant was not on trial for murder, but for capital murder. Depending on the precise
allegations of the indictment, a capital murder prosecution can include all three "conduct elements." Patrick
v. State, 906 S.W.2d 481, 491-92 (Tex. Crim. App. 1995). Determining which conduct element or
elements apply in any given case is no simple task. See Cook v. State, 884 S.W.2d 485, 492-94 (Tex.
Crim. App. 1994) (Maloney, J., concurring); and see Patrick v. State, 906 S.W.2d 481, 491-92 (Tex.
Civ. App. 1995) (alleged capital murder offense contained all three conduct elements, but certain definitions
should have been limited to underlying felony). Rather than prolong this opinion by analyzing the various
conduct elements of murder