COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 IN THE
 MATTER OF I.R.,
  
                             Appellant.
  
  
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-03-00130-CV
  
 Appeal from the
  
 65th District Court
  
 of El Paso County, Texas
  
 (TC#99,01870)
 
 




 

O
P I N I O N

I.R. was adjudicated delinquent for
committing an assault and was placed on probation until his eighteenth
birthday.  In his sole issue on appeal,
he asserts that his trial counsel was ineffective.  We reverse and remand.

Factual and Procedural Background








The State=s first witness at the adjudication
hearing was the fifteen-year-old complainant, Jessie Braun.  He testified that on August 4, 2002, he and
his older sister were walking down an El Paso street when I.R. and another boy
rode up behind them on bikes and began throwing rocks.  One of the rocks hit Jessie on the back of
his neck.   Jessie identified I.R. as the
person who threw the rock that hit him. 
He knew I.R. because they had previously gone to the same school.  According to Jessie, I.R. had Abeat [him] up@ when they were in the sixth
grade.  Jessie also accused I.R. of
saying Asexual things@ to his little sister.

On cross-examination, defense counsel
established that Jessie was certain about the date of the assault:

Q:        And
this is on August the 4th, right?

 

A:        Yes.

 

Q:        You
sure?

 

A:        Yes,
sir.

 

Q:        I mean,
you sure on August the 4th that [I.R.] was here in town?

 

A:        Yes.

 

Q:        Absolutely,
right?

 

A:        Yes.  

 

Counsel also established that Jessie was bigger than I.R. at
the time of the hearing.   Counsel then
engaged in a line of questioning that was apparently intended to make Jessie
seem infantile:

Q:        You=re coming into court saying this little kid here is picking on you?

 

A:        Because
I=ve been taught not to hit him. . . . .  Go along, let them hit you, and go tell mom.

 

Q:        Did you
tell your mommy that this happened?

 








A:        Yes.

 

.   .   .

 

Q:        So you
went home.  You went running home and you
told mom and she called the police?

 

A:        Yes,
and I was on an ambulance, thank you.

 

.   .   .

 

Q:        But you
did tell your mommy what happened here, right?

 

A:        Yes.

 

Q:        And you=re glad you did. 
And next time you have a problem with one of the kids on the street in
the playground you=re going to call mommy again.   

 

At this point, the prosecutor objected on the ground that
counsel was badgering the witness.  The
objection was sustained.  Counsel then
concluded by stating:  APass the witness.  Go call mommy.@ 
This comment prompted the judge to say APlease.@

Jessie=s older sister, Denise, corroborated
Jessie=s account of the assault.  She also testified that she remembered I.R.
because when he and Jessie went to school together they would Aalways fight.@








Patrol Officer Michelle Ojeda testified next. 
She stated that when she arrived on the scene, she observed an injury on
the back of Jessie=s neck.  Ojeda called for medical assistance because Jessie=s mother told her that Jessie Ahad a history of medical conditions.@ 
On cross-examination, defense counsel attempted to determine whether
Jessie=s history of medical conditions
included mental problems, but Ojeda did not have any
information about that issue.

The State rested at the conclusion of
Ojeda=s testimony.  When
asked if he had any witnesses, defense counsel responded, AWell, if Jessie=s mom=s here I would like to call her.  I want to find out whether he has a history
of mental problems.@

Jessie=s mother testified that he is on medication for attention
deficit hyperactivity disorder.

Defense counsel then called I.R. to
the witness stand.  I.R. testified that
he was fourteen-years-old.  He denied
that he was involved in the assault.  He
claimed that on August 4, 2002, he was in Elephant Butte, New Mexico, with his
next-door neighbor Roger Hayden and Hayden=s son Jacob.  At the conclusion of the adjudication
hearing, the trial judge found that I.R. engaged in delinquent conduct as
alleged in the State=s petition.

Thereafter, defense counsel filed a
motion for new trial based upon two grounds: (1) Athe interest of justice@ and (2) AJuvenile=s chief defense witness, Roger Hayden
was unavailable and unable to attend Court. 
He will testify as to the actual innocence of the juvenile.@ 
An affidavit by Hayden was attached to the motion.  The affidavit states that I.R. was with
Hayden and his family in Elephant Butte on August 4, 2002.








At the commencement of the hearing on
the motion for new trial, defense counsel announced, AMy client=s mother informed me that Mr. Hayden
may have been a material witness.  I
thought he was going to show on the day of trial, but he didn=t, so we ended up issuing a subpoena
for him today.@ 
Hayden testified that he has known I.R. for all of I.R.=s life and that I.R. does yard work
for him.  He further testified that from
Friday, August 2, 2002, at approximately 4 p.m., to August 4, 2002, at
approximately 5:30 p.m., I.R. was with him and his family at Elephant Butte
Lake.  According to Hayden, there was Ano way@ that I.R. could have been in El Paso
before 5 p.m. on August 4, 2002.[1]

On cross-examination, Hayden
testified that I.R.=s mother knew that I.R. was with him
on the day in question.  He also
testified that he was not subpoenaed for the adjudication hearing.  The prosecutor did not attempt to impeach
Hayden=s testimony regarding I.R.=s whereabouts on August 4, 2002.

The trial judge asked Hayden several
questions to determine why he did not appear for the adjudication hearing.  Hayden testified that he Adid not know anything about this
[case] until they asked me if I could go see their attorney . . . .@ 
The judge asked, AThe mother didn=t tell you anything?@ and Hayden
responded:

I didn=t hear anything at all until I guess it was after the
trial and they came back and [I.R.] had said that he was--that he had had this
problem on this date and I told him, AHow
could you have that?  You were with us at
the lake.@  And that=s
when I found out about it.

 

The defense=s only other witness was I.R.=s mother.  Defense
counsel asked her if she told Hayden about the adjudication hearing.  She responded that she was not able to notify
him because she does not speak English.








In her closing argument, the prosecutor
argued, A[M]aybe the
mother should have made more efforts--and I can understand [defense counsel=s] position in this case--but, quite
frankly, the witness was never notified properly to be here on that day.@ 
The judge took the matter under advisement and later signed an order
denying the motion for new trial.

At the disposition hearing, defense
counsel moved to withdraw as I.R.=s attorney Abecause of certain issues, . . . it
would be more appropriate that a different lawyer do the appeal.@ 
He also requested that the judge Aappoint counsel to pursue an appeal
so they may test the Motion for New Trial in addition to any claim of ineffect [sic].@ 
The judge granted the motion to withdraw and appointed new appellate
counsel.

The Law Governing Ineffective
Assistance of Counsel Claims








A two-pronged test governs our review
of ineffective assistance of counsel claims. 
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). 
First, we must determine whether counsel=s performance was deficient.  Id. 
To establish that counsel=s performance was deficient, the
defendant must show that the performance fell below an objective standard of
reasonableness.  Strickland
v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052,
2068, 80 L.Ed.2d 674 (1984); Thompson, 9 S.W.3d at 812.  Second, we must determine whether counsel=s deficient performance prejudiced
the defendant.  Thompson, 9 S.W.3d at 812.  To
establish prejudice, the defendant must show that there is a reasonable
probability that the result of the proceedings would have been different but
for counsel=s deficient performance.  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Thompson, 9 S.W.3d
at 812.  A reasonable probability
is a probability sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Thompson, 9 S.W.3d
at 812.

Our review is highly deferential and
presumes that counsel=s actions fell within a wide range of reasonable professional
assistance.  Mallett v. State, 65
S.W.3d 59, 63 (Tex. Crim. App. 2001); Thompson,
9 S.W.3d at 813.  The defendant
bears the burden of proving by a preponderance of the evidence that counsel was
ineffective.  Thompson, 9 S.W.3d at 813.  We
look to the totality of the representation and the particular circumstances of
each case in evaluating the effectiveness of counsel.  Id. 
In some cases, a single egregious error may constitute ineffective
assistance.  Id.

An allegation of ineffectiveness must
be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness.  Id.  For example, the failure to call a
witness does not amount to ineffective assistance unless the record shows that
the witness was available and would have provided testimony beneficial to the
defendant.  Butler
v. State, 716 S.W.2d 48, 55 (Tex. Crim. App.
1986).  Moreover, when the record
is silent as to the motivations underlying counsel=s decisions, the defendant usually
cannot overcome the strong presumption that counsel=s conduct was reasonable.  Mallett, 65 S.W.3d at 63.








Application of the Law to the Facts
of This Case

The First Prong:  Deficient Performance

I.R. argues that his trial counsel
was ineffective in failing to subpoena Hayden to testify at the adjudication
hearing.  Hayden=s testimony at the new-trial hearing
establishes that he was available and that his testimony would have been
beneficial.  See Butler, 716 S.W.2d at 55.  The
record also establishes that the failure to call Hayden as a witness was not a
strategic or tactical decision by counsel. 
At the commencement of the new-trial hearing, counsel admitted, AMy client=s mother informed me that Mr. Hayden
may have been a material witness.  I
thought he was going to show on the day of trial, but he didn=t, so we ended up issuing a subpoena
for him today.@ 
Apparently recognizing his mistake, counsel moved to withdraw so I.R.
could pursue a claim of Aineffect@ on appeal.

An attorney has a professional duty
to present all available testimony in support of the client=s defense.  See State v. Thomas,
768 S.W.2d 335, 336 (Tex. App.--Houston [14th Dist.] 1989, no pet.).  To fulfill this duty, counsel should arrange
for the issuance of subpoenas on individuals whom counsel intends to call as
witnesses at trial.  In determining
whether the defense was entitled to a continuance because of a missing witness,
one appellate court stated:








Because a missing witness is a risk inherent in almost
every case, the party seeking to present the witness must exercise reasonable
diligence to protect against the possibility that a witness will not appear as
promised.  Taking appropriate measures
(i.e., arranging for the timely issuance and service of a subpoena to compel
the witness=s appearance at trial) is especially critical when the
witness is material to the case.  Failure
to take the necessary steps to secure the attendance of a key witness
demonstrates a lack of reasonable diligence.

 

Rodriguez v. State, 21 S.W.3d 562, 566 (Tex.
App.--Houston [14th Dist.] 2000, pet. ref=d). 
Moreover, a witness=s promise to appear for trial is no excuse for failing to
subpoena the witness.  Drew v. State,
743 S.W.2d 207, 228 n.17 (Tex. Crim.
App. 1987).  We conclude that
counsel was deficient in failing to arrange for the issuance of a subpoena on
Hayden.

Furthermore, an attorney has a duty
to make an independent investigation of the facts supporting the defense.  Butler, 716 S.W.2d
at 54.  This includes the
responsibility to seek out and interview potential witnesses.  Id.; Thomas, 768
S.W.2d at 336-37.  Defense counsel
acknowledged at the new-trial hearing that I.R.=s mother told him about Hayden.  But Hayden=s testimony at that hearing reveals
that he did not meet defense counsel until after the adjudication hearing.  We conclude that counsel was deficient in
failing to seek out and interview potential witnesses.[2]








The Second Prong:  Prejudice

The failure to interview or call a
witness satisfies the prejudice prong if it results in the failure to advance a
viable defense.  See Butler, 716
S.W.2d at 56; Shelton v. State, 841 S.W.2d 526, 526 (Tex. App.--Fort
Worth 1992, no pet.); Thomas, 768 S.W.2d at 336-37.  In Shelton, the State=s only evidence was the testimony of
the sixteen-year-old complaining witness. 
See 841 S.W.2d at 526.  At the first trial, defense counsel presented
the alibi testimony of the defendant=s great niece, whose testimony Aso completely contradicted that of
the complainant that it would have been impossible for the jury to have
believed both witnesses.@  Id.  The defendant was convicted, but the
conviction was overturned on appeal because of an erroneous venue ruling.  Id. 
The attorney who represented the defendant at the first trial also
represented him at the second trial.  Id.  At the second trial, however, counsel failed
to contact the defendant=s great niece to testify. 
Id.  The appellate court
reversed the conviction again, concluding that counsel=s failure to secure the great niece=s testimony robbed the defendant of
his only viable defense.  Id. 








In Thomas, the defendant was
convicted of aggravated sexual assault.  See
768 S.W.2d at 336. 
He testified at trial, relying on the defense of consent.  See id.  He claimed that the complainant offered him
sex in exchange for cocaine.  Id.  At a hearing on a motion for new trial, six
witnesses testified that the defendant and the complainant had an ongoing
sexual relationship, and one witness testified that the complainant had
previously traded sex for drugs.  Id. at 337. 
The appellate court affirmed the trial court=s decision to grant a new trial based
on ineffective assistance of counsel.  Id.  The appellate court held that the evidence at
the new-trial hearing established that the defense of consent was not fully
advanced because of counsel=s failure to interview and call witnesses.  Id.

The facts of this case are analogous
to those of Shelton and Thomas. 
The only evidence implicating I.R. was the testimony of the teenage
victim and his teenage sister.  There was
also evidence of bad blood between the victim and I.R., thus giving Jessie and
Denise motivation to accuse I.R.  I.R.=s testimony raised the defense of alibi, but there was no
evidence to corroborate this testimony. 
Hayden=s testimony would not only have
corroborated the alibi, but would have completely contradicted the testimony of
Jessie and Denise, such that it would have been impossible for the fact finder
to have believed both him and Jessie and Denise.








The State suggests that Hayden=s testimony would have been merely
cumulative of I.R.=s testimony.  We disagree. 
Hayden was relatively disinterested; there was no other
disinterested-witness testimony regarding whether I.R. was the culprit.  See Thomas, 768 S.W.2d at 336
(upholding trial court=s finding of ineffective assistance because witnesses who
would have corroborated the defendant=s testimony on the defense of consent
were not called as witnesses); see also State v. Zapata, No.
04-00-00238-CR, 2001 WL 80466, at *2 (Tex. App.--San Antonio Jan. 31, 2001, no
pet.) (not designated for publication) (holding that disinterested-witness testimony that would have
supported alibi defense was not cumulative).

The State also argues that I.R. gave
two accounts of his whereabouts on the day of the assault and that Hayden=s testimony would have only
corroborated one of those accounts. 
According to the State, I.R. first testified that he was at Walmart when the assault occurred.  We believe the State has misread the record.

Defense counsel asked I.R. whether
Jessie=s mother ever confronted him.  After I.R. answered affirmatively, the
following colloquy occurred:

Q:        Well,
what happened? . . . .

 

A:        She was
just like telling me that why did I fight with her son.

 

Q:        All
right.  This was about a week later;
right?

 

A:        Yes.  Like when they said that this happened that I
threw a rock at him, I was coming down from Walmart--

 

Q:        Let=s talk about August 4, 2002.  Were you here in El Paso that day?

 

I.R. responded that he was at Elephant Butte on that
day.  Thus, I.R. testified that he was
returning from Walmart when Jessie=s mother accused him of fighting with
her son, but he was at Elephant Butte when the assault occurred.








Finally, the State argues that Hayden=s testimony at the new-trial hearing
negated any prejudice that might have resulted from counsel=s failure to subpoena him for the
adjudication hearing.  The State notes
that the same judge who presided at the new-trial hearing was the fact finder
at the adjudication hearing.  The State
suggests that the judge weighed Hayden=s testimony at the new-trial hearing
against the testimony at the adjudication hearing and denied the motion for new
trial because he found Hayden=s testimony not credible. 
This argument is not supported by the law or the record.

In Armstrong v. Manzo, a father was not given notice of proceedings to
adopt his child until after the adoption decree was entered.  380 U.S. 545, 546-48, 85 S.Ct. 1187, 1188-89, 14 L.Ed.2d 62 (1965).  Upon learning of the adoption, the father
promptly filed a motion for new trial.  Id.
at 548, 85 S.Ct. at 1189.  The trial court denied the motion.  Id. at 549, 85 S.Ct.
at 1190.  This Court affirmed, holding
that the failure to notify the father of the adoption proceedings was cured by
the hearing on the motion for new trial, when the father had an opportunity to
present evidence as to why the adoption should not occur.  Id. at 549-51, 85 S.Ct.
at 1190-91.  The U.S. Supreme Court
reversed.  The Court noted that if the
father had been given proper notice, the parties seeking the adoption would
have had the burden of proving grounds for the adoption.  Id. at 551, 85 S.Ct.
at 1191.  But at the hearing on the
motion for new trial, the father had the burden of disproving grounds for the
adoption.  Id., 85 S.Ct. at 1191. 
Therefore, the Court held that the father could be accorded due process
only by granting his motion for new trial, so that the trial court could Aconsider the case anew.@ 
According to the Court, AOnly that would have wiped the slate clean [and] [o]nly that would have restored the [father] to the position
he would have occupied had due process of law been accorded to him in the first
place.@ 
Id. at 552, 85 S.Ct. at 1191.








Similarly, in this case, the State
had the burden at the adjudication hearing to prove I.R.=s delinquency beyond a reasonable
doubt.  See Tex. Fam. Code Ann.
' 54.03(f) (Vernon Supp. 2004); see
also Hunt v. State, 779 S.W.2d 926, 927 (Tex. App.--Corpus Christi 1989,
pet. ref=d) (holding that the State is
required to disprove a defense beyond a reasonable doubt if there is some
evidence supporting the defense).  At the
new-trial hearing, however, I.R. had the burden to prove that he was entitled
to a new trial.  See Patrick v. State,
906 S.W.2d 481, 498 (Tex. Crim. App. 1995); Godoy v. State, ___ S.W.3d ___, ___, 2003 WL
22382616, at *2 (Tex. App.--Houston [1st Dist.] Oct. 16,
2003, no pet. h.).








I.R.=s motion for new trial alleged that
Hayden was unavailable at the time of the adjudication hearing and that he
would testify to I.R.=s actual innocence.  To
be entitled to a new trial on this ground, I.R. had to prove: (1) he did not
know of Hayden=s potential testimony at the time of
the adjudication hearing; (2) his failure to discover the potential testimony
was not due to a want of due diligence; (3) the testimony would probably bring
about a different result in another trial; and (4) the testimony is admissible
and not merely cumulative, corroborative, collateral, or impeaching.  See State v. Balderas,
915 S.W.2d 913, 916 (Tex. App.--Houston [1st Dist.] 1996, no pet.).  Both the prosecutor and the trial judge
focused on the first two requirements at the new-trial hearing.  During cross-examination of Hayden, the
prosecutor uncovered that I.R.=s mother knew that I.R. was with
Hayden on the day in question and that Hayden was not subpoenaed for the
adjudication hearing.  Likewise, the
judge asked Hayden several questions to determine why he did not appear for the
adjudication hearing.

Based on Armstrong and the
record in this case, we cannot conclude that the failure of counsel to secure
Hayden=s presence at the adjudication
hearing was cured by Hayden=s testimony at the new-trial hearing.  Instead, we conclude that there is a
reasonable probability--i.e., a probability sufficient to undermine our
confidence in the outcome--that the result of the adjudication proceeding would
have been different if counsel had subpoenaed Hayden.

Conclusion

For the reasons stated herein, we
sustain I.R.=s sole issue on appeal.  The trial court=s judgment is reversed, and this
cause is remanded for a new trial.

 

SUSAN
LARSEN, Justice

December 4, 2003

 

Before Panel No. 3

Barajas, C.J., Larsen, and
Chew, JJ.

 











[1]Although
the time of the assault was not discussed at the adjudication hearing or the
new-trial hearing, the record reflects that the assault occurred at
approximately 9:50 a.m.





[2]I.R.
also argues that counsel=s
questioning of Jessie=s
mother and Officer Ojeda was deficient.  This argument is based on information in the
pre-disposition report that was prepared after the adjudication hearing.  The report states that Jessie=s mother initially told Officer Ojeda that her children had been assaulted Awith several huge rocks thrown by unknown
suspects@
(emphasis added).  The report also states
that I.R. was taken into custody at school. 
Because the assault occurred on a Sunday, it can be inferred that I.R.
was not taken into custody on the day of the assault.  I.R. argues that this information from the
pre-disposition report supports his claim that he was not the culprit and that
he was not in town when the assault occurred. 
While it seems likely that a reasonable investigation would have
uncovered this information, the record does not disclose counsel=s reasons for failing to elicit the
information.  Therefore, we do not base
our determination of deficient performance on this argument.  See Mallett,
65 S.W.3d at 63.