

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00163-CR

**JOSEPH HORVATH,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 40th District Court
Ellis County, Texas
Trial Court No. 31,157CR**

## MEMORANDUM  OPINION

A jury found Joseph Horvath guilty of capital murder in the death of his seven-week-old son Alexzander, and he automatically received a life sentence.  Horvath argues in two issues that the trial court erred in overruling his motion for directed verdict on the ground that the evidence is legally and factually insufficient to show that Horvath intentionally or knowingly caused his child's death.  We will affirm.

At Alexzander's birth, Child Protective Services (CPS) took custody of him because CPS already had removed his mother's other children.  A few weeks later, after

a court hearing, 22-year-old Horvath obtained custody of Alexzander. Horvath and Alexzander's mother were not married and did not live together. Horvath lived in an apartment with two other men and was Alexzander's sole caregiver. Horvath's parents were also given custody of Alexzander, but he lived exclusively with Horvath, who placed him in day care while Horvath worked.

Around 11:00 p.m. on June 27, 2006, Horvath called 9-1-1 to report that something was wrong with Alexzander, advising that he had gone limp and was having trouble breathing. When paramedics arrived, Alexzander was pale blue and motionless. He did not have a pulse and had bloody mucus coming from his nose. Horvath told the paramedics that he was the baby's father and stated that he had found him in that condition when he went to wake him to feed him. The paramedics took Alexzander to the hospital, where resuscitation efforts failed after an hour-and-a-half.

At the hospital, Horvath spoke to several hospital employees. They and the paramedics testified that Horvath's emotionless demeanor was unusual. The treating physician, Dr. Craig Yetter, said that the blood coming from Alexzander's nose and the swelling around his right eye, coupled with Horvath's emotionless demeanor and lack of grieving, caused him to suspect abuse.

The following day, Horvath spoke with Detective John Erisman about Alexzander's death. The interview was videotaped and was shown at trial. During the interview, Horvath gave several versions of the events leading up to Alexzander's death. Horvath ultimately admitted that he shook Alexzander and caused his death. A

CPS investigator also interviewed Horvath, who she said had a smirk, displayed no emotion, and had an eerie demeanor.

The medical examiner who performed the autopsy on Alexzander found at least two different episodes of brain trauma, with one occurring earlier than the one that caused his death. He testified at trial that the cause of Alexzander's death was blunt force injuries to the brain that were severe, inflicted, and intentional.

Horvath testified, saying that his shaking Alexzander caused his death but that he did not intentionally or knowingly cause his death. He admitted that he knew that shaking a baby was dangerous and could cause death, but he shook Alexzander anyway.

The jury was charged on capital murder, murder, manslaughter, and criminally negligent homicide. Horvath was found guilty of capital murder.

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7. The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEXAS L. REV. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416-17.

For the State to prove that Horvath committed capital murder, it was required to prove that he intentionally or knowingly caused Alexzander's death. *See* TEX. PEN. CODE ANN. § 19.02(b)(1) (Vernon 2003), § 19.03(a)(8) (Vernon Supp. 2008). Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Montgomery v. State,* 198 S.W.3d 67, 87 (Tex. App.—Fort Worth 2006, pet. ref'd); *Morales v. State*, 828 S.W.2d 261, 263 (Tex. App.—Amarillo 1992), *aff'd,* 853 S.W.2d 583 (Tex. Crim. App. 1993). A person acts "knowingly," or with knowledge, with respect to a

result of his conduct when he is aware that his conduct is reasonably certain to cause the result.  TEX. PEN. CODE ANN. § 6.03(b) (Vernon 2003).  Intent can be inferred from the extent of the injuries to the victim, the method used to produce the injuries, and the relative size and strength of the parties.  *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).  In a murder case, a culpable mental state can be inferred from the acts, words, and conduct of the accused.  *Id.*

Horvath testified that he had bought and put together a changing table.  A few days before Alexzander's death, while he was changing a diaper, he pushed down on the table, causing it to partially collapse and Alexzander to slide through the end headfirst and strike a filing cabinet.  A State's expert bought a replica changing table to try to duplicate Horvath's explanation of how the table broke but was unable to do so.  The State's theory was that Horvath, frustrated with Alexzander's nighttime crying and not sleeping for more than three hours at a time, hit the table with extreme force out of frustration, causing it to break.

Horvath admitted that Alexzander's nighttime crying and not sleeping frustrated him and that he would either punch pillows or go outside to smoke a cigarette to relieve his frustration.  He also admitted that he had told Detective Erisman that Alexzander was "bankrupting" him and that he told different stories to Erisman about what had happened to Alexzander.

Viewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that Horvath intentionally or knowingly caused Alexzander's death.  Other than Horvath's denial of

intent, there was no other controverting evidence, and the jury was free to disbelieve Horvath. Horvath testified on cross-examination:

Q.    You knew shaking a baby was dangerous and could cause their death?

A.    Yes.

Q.    Yet you shook Alexzander anyhow?

A.    Yes.

Considering all of the evidence in a neutral light, we find that the evidence is factually sufficient. The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong and manifestly unjust.

Because the evidence is legally and factually sufficient, the trial court did not err in overruling Horvath's motion for directed verdict. We overrule Horvath's two issues and affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Affirmed
Opinion delivered and filed February 25, 2009
Do not publish
[CRPM]