

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00103-CR

_____

JASON DIXON, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F22-409-211

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Jason Dixon was convicted of murdering his girlfriend. He challenges that conviction, arguing that (1) the evidence was insufficient to prove that he caused her death intentionally or knowingly; and (2) the trial court erred by refusing to instruct the jury on the lesser-included offense of manslaughter. We will affirm.

## I. Background

Dixon admitted to killing his live-in girlfriend, Ashly Holbrook,[1] by shooting her four times at "point-blank" range. At trial, he argued that he had acted in self-defense.

## A. Murder

In the hours before the murder, Dixon and Holbrook went to a bar. Evidence later showed that Holbrook became heavily intoxicated. But Dixon testified that he stayed "well within [his] tolerance," and he drove them home around midnight. Dixon recalled that—after Holbrook "pass[ed] out" on the drive home from the bar—he asked her if she had "gotten stoned,"[2] and she became angry and punched him in the mouth.

---

[1]The record contains multiple spellings of the victim's name. We adopt the spelling used on her autopsy and driver's license.

[2]There was testimony that Holbrook regularly smoked marijuana and that this was a source of contention between her and Dixon. In one of Dixon's police interviews, he framed their conversation on the way home from the bar as him

According to Dixon, the fight continued when they arrived at home, with Holbrook repeatedly physically attacking him and the two engaging in mutual combat.[3]   Although the undisputed evidence showed that Holbrook had been behaving normally at the bar and that the couple had not been violent with one another in the past,[4] Dixon later described Holbrook's behavior that night as being "like a wildcat," "possessed," and very "unlike her."

At some point during the fighting, Dixon told Holbrook that he was "done" with the relationship; "it was over."   Saddened by the sudden degradation of their relationship, Dixon went into the master bathroom with his handgun,[5] loaded it, activated the slide, chambered a round, and contemplated suicide.[6]

---

confronting Holbrook about her marijuana use.  But at trial, he insisted that he had not had a problem with her smoking marijuana.

[3]The physical evidence was consistent with the couple having engaged in a mutual fight.  Holbrook exhibited missing fingernails, scratches on her buttocks, and bruises on her legs, while Dixon had a scratch on his face, a busted lip, and stretched clothing.

[4]Multiple witnesses testified that they had never seen any violence between Dixon and Holbrook.  Holbrook's oldest daughter stated as much, as did Holbrook's mother, three of Dixon's friends, and the couple's neighbor.

[5]The gun was a 9-millimeter semiautomatic pistol.

[6]Dixon gave different descriptions of how he ended up with his handgun in the bathroom.  In his initial statement to the police, Dixon stated that he had retrieved the gun from his nightstand.  But he told the jury that, when he went into the bathroom, he realized that his firearm—which he had carried with him to the bar— was still in his pocket.

Dixon later recalled that, as he was contemplating suicide, Holbrook came into the neighboring master bedroom and saw him in the bathroom with his gun. She called him names, questioned whether he had the wherewithal to kill himself, and told him that if he did not kill himself, she would.[7] Holbrook then "charged" at him. So, Dixon pointed the gun at Holbrook—at "point-blank" range—and "pulled the trigger until she stopped," following her body with the shots as she fell to the ground.[8]

Four shell casings were found in and around the bathroom, and Holbrook's autopsy showed that all four shots hit her—one in the head, another in the neck, another in the shoulder, and another in the thigh.[9] Two of the shots were independently sufficient to kill her.

The autopsy further revealed that Holbrook had marijuana and fentanyl in her system, along with an alcohol concentration that was more than twice the legal definition of intoxication.[10] *See* Tex. Penal Code Ann. § 49.01(2)(B) (defining

---

[7]In Dixon's initial statement to the police, he did not claim that Holbrook had threatened to shoot him. Instead, he stated that she had "charged the bathroom" calling him names, that he had told her to "get the f*** out" and not to "come at [him]," and that when she continued to come, he "shot her."

[8]In one police interview Dixon described shooting Holbrook as a "natural reaction" to her charging at him. But at trial, he testified that he had believed that she intended to grab the gun.

[9]Holbrook also sustained a gunshot wound to her arm, which was suspected to be a reentry wound from the shot to her head.

[10]The medical examiner testified that, based on Holbrook's blood and urine tests, her alcohol concentration was between 0.191 and 0.226.

"[i]ntoxicated" as, among other things, "having an alcohol concentration of 0.08 or more"). Dixon pointed to these substances as explanations for Holbrook's "possessed" behavior, which he claimed necessitated his shooting her in self-defense.

## B. Trial and Verdict

The trial court authorized the jury to convict Dixon of murder if it found that he had (1) "intentionally . . . caus[ed her] death . . . by shooting [her] with a firearm"; (2) "knowingly . . . caus[ed her] death . . . by shooting [her] with a firearm"; or (3) "with intent to cause serious bodily injury . . . , commit[ted] an act clearly dangerous to human life that caused [her] death . . . by shooting [her] with a firearm." *See id.* § 19.02(b)(1), (2); *see also id.* § 6.03 (defining culpable mental states). Although Dixon requested a jury charge on the lesser-included offense of manslaughter, the trial court denied the request.

Ultimately, the jury returned a general verdict finding Dixon guilty of murder, and after hearing punishment evidence, it assessed his punishment at confinement for 50 years and a $10,000 fine.

## II. Discussion

Dixon raises two issues on appeal: (1) the sufficiency of the evidence to prove his mens rea to commit murder; and (2) the trial court's failure to charge the jury on the lesser-included offense of manslaughter.

## A. Sufficiency of the Evidence to Prove Mens Rea

Dixon first challenges the sufficiency of the evidence to prove that he "intentionally or knowingly" killed Holbrook. *See id.* § 19.02(b)(1).

### 1. Standard of Review

A person commits murder if, as relevant here, he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." *Id.* § 19.02(b)(1), (2). To determine whether the evidence was sufficient to show that Dixon had the requisite mens rea for murder, we view all the evidence in the light most favorable to the verdict and analyze whether any rational factfinder could have found this essential element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). The jury alone determines the credibility of witnesses, resolves conflicts in the testimony, and weighs the evidence; "[a] court's role on appeal is restricted to guarding against the rare occurrence when the [jury] does not act rationally." *Nisbett*, 552 S.W.3d at 262.

Because the charge authorized the jury to return a general conviction based on three alternate theories of murder, "the verdict of guilty will be upheld if the evidence is sufficient on any one of the theories." *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003); *see Jordan v. State*, No. 02-12-00301-CR, 2014 WL 2922316, at *6 (Tex. App.—Fort Worth June 26, 2014, no pet.) (mem. op., not designated for

6

publication); *Gilmore v. State*, 397 S.W.3d 226, 243–44 (Tex. App.—Fort Worth 2012, pet. ref'd).

### 2. Unchallenged Evidence of Intent to Cause Serious Bodily Injury

As an initial matter, Dixon challenges only a subset of the theories of murder submitted to the jury. He argues that the evidence was insufficient to prove that he intentionally or knowingly caused Holbrook's death—two of the theories submitted—but he does not challenge the sufficiency of the evidence showing that he, "with intent to cause [Holbrook] serious bodily injury . . . , commit[ted] an act clearly dangerous to human life that caused [her] death . . . by shooting [her] with a firearm"—the third theory submitted. *See* Tex. Penal Code Ann. § 19.02(b)(1), (2). The State highlighted Dixon's oversight in its brief, but Dixon has not filed a reply brief or asked this court to construe his sufficiency argument as a challenge to all three theories of mens rea that the jury could have relied upon.

Because Dixon's intent to cause Holbrook serious bodily injury (while committing an act clearly dangerous to human life) was one of the alternate theories of murder submitted to the jury, and because he does not challenge its sufficiency on appeal, the verdict can be upheld on this theory. *See Swearingen*, 101 S.W.3d at 95; *see also Kitchens v. State*, 823 S.W.2d 256, 259 (Tex. Crim. App. 1991) (overruling sufficiency issue because defendant challenged only one of the two alternate theories of murder submitted to jury); *Billiot v. State*, No. 02-17-00139-CR, 2018 WL 2142728, at *2 (Tex. App.—Fort Worth May 10, 2018, pet. ref'd) (mem. op., not designated for

7

publication) (overruling sufficiency issue because defendant failed to challenge alternate theory of crime submitted to jury); *Speers v. State*, No. 05-14-00179-CR, 2016 WL 929223, at *15 (Tex. App.—Dallas Mar. 10, 2016, no pet.) (mem. op., not designated for publication) (holding that, because the defendant "d[id] not contest the sufficiency of the evidence to prove the two alternate theories charged for capital murder, he present[ed] no error for our review"). This alone warrants overruling Dixon's first issue.

### 3.     Sufficient Evidence of Intentionally or Knowingly Causing Death

But even if Dixon had lodged appellate challenges to all three theories of murder, or even if the jury charge had omitted the unchallenged third alternate theory, there is nonetheless sufficient evidence that Dixon intentionally or knowingly caused Holbrook's death. *See* Tex. Penal Code Ann. § 19.02(b)(1).

"A person acts intentionally, or with intent, with respect . . . to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). And he "acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). Because "[w]e cannot read an accused's mind," these culpable mental states "[b]y [their] nature . . . must generally be inferred from the circumstances." *Nisbett*, 552 S.W.3d at 267 (holding evidence sufficient to support murder convictions).

8

One circumstance with particular bearing on a defendant's mental state is his shooting of another person at close range. "It is both a common-sense inference and an appellate presumption that a person intends the natural consequences of his acts, and that the act of pointing a loaded gun at someone and shooting it toward that person at close range demonstrates an intent to kill." *Ex parte Thompson*, 179 S.W.3d 549, 556 n.18 (Tex. Crim. App. 2005) (internal citations omitted); *see Rodriguez v. State*, 629 S.W.3d 229, 234 (Tex. Crim. App. 2021) (quoting *Thompson*).

Here, Dixon testified that, when Holbrook "charged" at him, he pointed the gun "in her direction," and "pulled the trigger until she stopped." *See Rodriguez*, 629 S.W.3d at 234 (noting that defendant's "admitted use of a deadly weapon," i.e., pointing a gun at the complainant, "supported an intent to kill"). And he told the police that, when he shot "in [Holbrook's] direction," she was at "point-blank [range], . . . literally," and given the proximity, he acknowledged that he was "not going to miss." This was sufficient for a rational jury to infer Dixon's intention to cause Holbrook's death or, at a minimum, his reasonable certainty that her death would result. *See* Tex. Penal Code Ann. § 6.03(a), (b).

Yet, there were other incriminating circumstances evidencing Dixon's mens rea as well:

- Dixon told the police that he remembered loading and chambering a round just before the murder (when he was contemplating suicide), confirming that he was aware that the gun was loaded with a round in the chamber and capable of causing death.

9

- Dixon also told the police that his first shot seemed to have hit Holbrook "because it got quiet," but nonetheless, "[he] just kept" firing, "pulling the trigger, . . . one after another in succession," "following her down" with the shots as she fell. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (noting that intent can be inferred from "the acts, words, and conduct of the accused").

- Dixon shot Holbrook not once, not twice, but four times. *See Nisbett*, 552 S.W.3d at 267 (noting that "[t]he defendant's culpable mental state may also be inferred from the extent of the victim's injuries"); *Patrick*, 906 S.W.2d at 487 (similar).

- Dixon told the police that, just before the shooting, Holbrook had been calling him names, he had told her to "get the f*** out" of the bathroom and not to "come at [him]," and it was when she continued to come towards him that he "shot her." *See Nisbett*, 552 S.W.3d at 265 (noting that motive "is a significant circumstance indicating guilt").

- Dixon's description of Holbrook's violent behavior was inconsistent with other evidence, including the testimony and surveillance footage of her normal behavior at the bar that evening, Dixon's own description of her passing out on the way home from the bar, the testimony describing Holbrook's "calm" demeanor when she smoked marijuana, and the testimony describing the depressive effects of the substances in Holbrook's system.[11] *See id.* at 267 (noting that the "culpable mental state for murder can be inferred from a defendant's . . . implausible explanations to the police").

Dixon does not address any of this evidence. Instead, he points to other evidence—specifically, the drugs in Holbrook's system and his testimony that Holbrook had charged at him with the intent to grab his gun—which he alleges

---

[11]There was testimony that marijuana, alcohol, and fentanyl were all depressants, that THC was a "hallucinogenic" that "[a]lters perception," and that if Holbrook's marijuana had been laced with fentanyl, it generally would have enhanced the marijuana's depressive effects. The medical examiner confirmed that, had Holbrook not been killed by the gunshots, the substances in her blood would have raised "concern" because they could have "slow[ed] her down so much [that] her body [could] stop functioning."

created a reasonable doubt regarding his intent to kill. But this evidence went to Dixon's theory of self-defense; it showed nothing regarding his alleged lack of intent to cause Holbrook's death. "People acting in self-defense often have the intent to kill or to cause serious bodily injury." *Ritcherson v. State*, 568 S.W.3d 667, 678 (Tex. Crim. App. 2018) (stating in analysis of lesser-included instruction that "[e]ven if [the defendant had] stabbed [the victim] to protect herself and in response to provocation, that is not evidence that she did not intentionally or knowingly stab [the victim] with the intent to kill her or to cause her serious bodily injury").

The same is true of the evidence that Dixon claims refuted his having knowingly killed Holbrook. Dixon points to his statements that he had not realized the bullets had hit Holbrook and his surprise that one bullet had struck the back of her head,[12] arguing that such statements "go[] directly to the element of knowing" because he had not known he had shot her in the head. Dixon has not cited any case law to support the idea that a shooter acts knowingly only if he immediately realizes he hit the target and only if he hits the precise location on the body that he was aiming for. The question is whether the shooter is "aware that his conduct is reasonably certain to cause the result" of death. Tex. Penal Code Ann. § 6.03(b).

---

[12]On appeal, Dixon claims that his statement to the police that it did not make sense for Holbrook to have an entry wound in the back of her head (given that she was facing him when he shot her) showed that he "was not aiming at her head or any part of her body." But this is a non sequitur. Dixon has not cited, nor has our review of the record revealed, any evidence that Dixon was aiming away from Holbrook's body or away from her head.

Here, a rational jury could have found that Dixon was aware that his shooting Holbrook was reasonably certain to kill her—whether or not he immediately realized that he had killed her, and whether or not her wounds were where he expected them to be.

Plus, the jury alone determined the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Nisbett*, 552 S.W.3d at 262. It was not required to believe Dixon's testimony that he was defending himself or his statements to the police that he had not realized he had shot Holbrook in the back of the head.[13] *See Compton v. State*, No. 2-06-281-CR, 2007 WL 4462575, at \*7 (Tex. App.—Fort Worth Dec. 20, 2007, no pet.) (per curiam) (mem. op., not designated for publication) (noting that "the jury was free to believe or disbelieve part or all of the witnesses' testimony, including [the defendant's] testimony, which it disbelieved").

Indeed, the verdict demonstrates that the jury did not find Dixon's testimony credible. Rather, it chose to believe the evidence that, when Dixon shot Holbrook four times at "point-blank" range, he intended to kill her or was reasonably certain that shooting her would kill her. *See* Tex. Penal Code Ann. § 6.03(a), (b). This was a

---

[13]In fact, Dixon himself issued conflicting statements on these issues. In his first police interview, Dixon stated that he "could have just let her c[o]me in and beat [him] or whatever," with no mention of Holbrook allegedly going for his gun. In his second police interview, Dixon stated that, even though Holbrook had threatened to kill him if he did not kill himself, she would not have done it. And he told the police that the first shot had seemed to have hit Holbrook "because it got quiet," but "[he] just kept" firing anyway. Plus, in a later jailhouse call, Dixon stated that "looking back," he "really didn't need to shoot."

12

rational conclusion based on the evidence. *See Nisbett*, 552 S.W.3d at 262 (describing appellate court's role in sufficiency review as "guarding against the rare occurrence when the factfinder does not act rationally").

We overrule Dixon's first issue.

## B. Omission of Lesser-Included Manslaughter Charge

In his second and final issue, Dixon argues that the trial court erred by refusing to charge the jury on the lesser-included offense of manslaughter.

### 1. Standard of Review

A person commits manslaughter if "he recklessly causes the death of an individual," Tex. Penal Code Ann. § 19.04(a), meaning that "he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result [of death] will occur," *id.* § 6.03(c). The State concedes that manslaughter is a lesser-included offense of murder. *See Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) (recognizing that "voluntary manslaughter is a lesser-included offense of murder").

A defendant is entitled to a jury instruction on a lesser-included offense if there is more than a scintilla of evidence from which a rational jury could find the defendant guilty of only the lesser offense. *Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023); *Ritcherson*, 568 S.W.3d at 670–71. Put differently, there must be evidence that "directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense." *Ritcherson*, 568 S.W.3d at 671; *see Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) (explaining in murder

13

case that there must be "some affirmative evidence that [the defendant] did not intend to cause serious bodily injury when he shot the victim . . . [and] some affirmative evidence . . . that [he] was aware of but consciously disregarded a substantial and unjustifiable risk that death would occur"); *Edwards v. State*, No. 02-22-00022-CR, 2023 WL 5115745, at *13 (Tex. App.—Fort Worth Aug. 10, 2023, pet. ref'd) (mem. op., not designated for publication) (noting that "[i]t is not enough that the jury could disbelieve evidence pertaining to the greater offense[;] . . . [t]here must be some evidence refuting or negating the greater offense or some evidence that is open to different interpretations").

### 2. No Evidence of Only Manslaughter

Here, then, the trial court was required to charge the jury on manslaughter only if there was evidence that "directly refute[d] or negate[d]" the mens rea required for murder—Dixon's intention to kill Holbrook, his awareness that shooting her was reasonably certain to kill her, or his intent to cause her serious bodily injury by shooting her—while also suggesting the mens rea required for manslaughter—that Dixon was aware of but consciously disregarded a substantial and unjustifiable risk that, by shooting Holbrook, her death would result. *See* Tex. Penal Code Ann. § 6.03 (defining culpable mental states), § 19.02(b) (defining murder), § 19.04(a) (defining manslaughter); *Schroeder*, 123 S.W.3d at 400–01 (noting that murder is a result-oriented offense and clarifying mens rea for murder versus manslaughter). No such evidence was presented at Dixon's trial.

Again, Dixon admitted that, after chambering a round into his gun, he pointed it at Holbrook at "point-blank" range and "pulled the trigger until she stopped" coming towards him. He admitted that, at that distance, "you're not going to miss." And he admitted that, even after the first shot seemed to have hit her because "it got quiet," he continued to "follow[] her down" with the gunshots as she began to fall. There was no evidence that Dixon thought the gun was unloaded but took the risk that it was not, that he thought the safety was on but took the risk that it was not,[14] that he had intended to point the gun away from Holbrook but took the risk of hitting her, or anything else of the kind. *See Cavazos*, 382 S.W.3d at 385 (holding murder defendant's statement that he did not mean to shoot anyone was insufficient to require lesser-included instruction on manslaughter when defendant had "[p]ull[ed] out a gun, point[ed] it at someone, pull[ed] the trigger twice, [then] fle[d] the scene (and the country)"); *cf. Roy v. State*, 509 S.W.3d 315, 317–20 (Tex. Crim. App. 2017) (holding defendant was entitled to lesser-included instruction on manslaughter because he presented evidence that, by driving while intoxicated with certain substances in his system, he was aware of but disregarded the risk of causing death); *O'Brien v. State*, 89 S.W.3d 753, 755 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding defendant was entitled to lesser-included instruction on manslaughter when he testified that, while holding a gun, "he was hit by the wood[ that] caused him to

_____

[14]Dixon testified that the gun did not have a safety.

15

'clench,' and the gun went off"). In other words, there was no evidence that, when Dixon shot Holbrook multiple times at close range, he was merely aware of a risk that Holbrook might die, as opposed to his intending to kill her or being reasonably certain that he would kill her.

Dixon has not identified any such evidence either. Although he contends, as he did in his sufficiency complaint, that the evidence supporting his self-defense theory refuted his intent to kill, as we have already stated, "[p]eople acting in self-defense often have the intent to kill or to cause serious bodily injury." *Ritcherson*, 568 S.W.3d at 678.

The only other evidence that Dixon points to as suggestive of manslaughter is his testimony regarding his intent to "stop" Holbrook, which he claims showed that he only wanted to stop her—not to kill her.[15] But once more, his alleged desire to "stop" Holbrook says nothing about his intent to kill her. Just as a person can intend to kill another as a means of self-defense, a person can intend to kill another as a means of stopping them.

On this record, no rational jury could have found that Dixon's actions— pointing a loaded gun at Holbrook at point-blank range and pulling the trigger four

---

[15]During the charge conference, the trial court asked Dixon to identify the evidence of manslaughter, and he pointed to the alleged evidence of his intoxication. Dixon does not raise this argument on appeal.

times—were neither intentional nor knowing (i.e., not murder) but only reckless (i.e., manslaughter). *See* Tex. Penal Code Ann. §§ 6.03(a), (b), (c), 19.02(b), 19.04(a).

We overrule Dixon's second issue.

### III. Conclusion

Having overruled both of Dixon's appellate issues, we affirm the judgment of conviction. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 25, 2024