**Affirmed as Modified and Opinion Filed October 16, 2024**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00858-CR

**JIMMY EUGENE JOHNSON III, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. F20-00068-L**

## MEMORANDUM OPINION

Before Justices Reichek, Carlyle, and Miskel
Opinion by Justice Miskel

Jimmy Eugene Johnson III appeals the trial court's judgment convicting him of capital murder in the course of committing robbery. The jury found him guilty, and the trial court assessed his punishment at life imprisonment without the possibility of parole. Johnson raises one issue on appeal arguing the evidence is insufficient to support his conviction. We conclude the evidence is sufficient. We also conclude the trial judge erred when he signed a judgment with errors in it. The judgment is affirmed as modified.

## I.     Factual and Procedural Background

Johnson contacted Carla Patricia Flores Pavon on "MeetMe," a messaging and dating application. Flores Pavon worked as a prostitute. On May 8, 2018, Johnson texted Flores Pavon telling her that she was beautiful. He told her that he had $60 and asked if he could come see her. When Flores Pavon asked if he was ready, Johnson responded that he had spent the money and offered her oral sex in exchange but she responded "for free na."

On May 9, 2018, at 2:35 p.m., Johnson again texted Flores Pavon telling her that he had $60 and asking if she was available. She answered affirmatively and provided him with her address. At 2:53 p.m, Johnson texted Flores Pavon that he would be at her apartment in fifteen minutes. From 3:07 p.m. to 3:19 p.m., Johnson exchanged texts with Flores Pavon about her building and apartment numbers and where Johnson should park his vehicle. Then, the texts stopped.

On the same afternoon, Alexa Hernandez, Flores Pavon's roommate, was napping in her bedroom and Abran "Jazmin" Lomas, Flores Pavon's friend, was visiting. As Lomas was leaving the bathroom, she saw Flores Pavon and Johnson enter Flores Pavon's bedroom and shut the door behind them. While waiting for her friend, Lomas went to the living room and watched television. During this time, she could hear both another television and "sexual sounds" coming from Flores Pavon's bedroom. At some point, Johnson came out of the bedroom and went to the living room where he encountered Lomas. Johnson made eye contact with Lomas, said

–2–

"Hey," then returned to the bedroom and shut the door. Based on their interaction, Lomas believed that Johnson had been unaware that she was in the apartment.

A neighbor saw Johnson leave the apartment through the back or patio door of Flores Pavon's apartment at around 3:15 p.m. Then, at 3:34 p.m., Johnson sent Flores Pavon two texts that said "Hello," and "I'm going home. You're not responding."

Hernandez woke from her nap and went into the living room where Lomas expressed concern about the amount of time that had passed since she had last seen Flores Pavon. When Hernandez and Lomas tried to open Flores Pavon's bedroom door they could not because it had been locked from the inside. The exterior patio door went directly to Flores Pavon's bedroom, so Lomas went outside to see if she could enter the bedroom through that door.

The patio door was unlocked and, when Lomas entered the bedroom, she found Flores Pavon lying face down and naked on the bed. Lomas called her name and tried to wake her, but Flores Pavon was nonresponsive and her face was bleeding and swollen. Lomas called 911 and the paramedics took Flores Pavon to the hospital where she was pronounced dead.

Lomas remained at the apartment and provided a statement to the police. She also reported that Flores Pavon's wallet was missing and gave them the passcode to Flores Pavon's mobile phone.

Meanwhile, Johnson contacted his ex-girlfriend and the mother of his child, Kayla Richards, indicating that he wanted to see his son at her residence. Despite Richards answering no, he went to her residence. Johnson told Richards that he was going on a business trip for some time and requested that she send him photos of their son while he was away.

The police obtained camera footage from a business located near Flores Pavon's apartment complex that showed a blue vehicle leaving the apartment complex parking lot at a high rate of speed at approximately 3:35 p.m. on the day Flores Pavon died. They also determined that Johnson owned a blue Chrysler sedan that appeared to match the vehicle in the video.

A week later, Johnson was arrested in Huntsville, Walker County, Texas. During an inventory search of Johnson's vehicle, the police found a popsicle box containing multiple cards belonging to Flores Pavon. During his interview by police, Johnson admitted that he had killed Flores Pavon but claimed that he accidentally killed her when he put her in a chokehold "to put her to sleep" while robbing her. He also admitted that he had taken $400 in cash and Flores Pavon's wallet, which he discarded somewhere along the roadway while driving.

An autopsy revealed that Flores Pavon had been strangled and her cause of death was asphyxia. Her injuries included neck and trunk compression among others. A component of smothering, that is something placed over the face, could not be excluded as a contributory factor.

Johnson was indicted for capital murder while in the course of committing or attempting to commit robbery. After a trial, the jury found him guilty of capital murder. Immediately following the jury's verdict, the trial judge assessed his mandatory punishment at life imprisonment without the possibility of parole.

## II.     Sufficiency of the Evidence

In issue one, Johnson argues the evidence is insufficient to support his conviction because there is no evidence that he had the requisite intent. He claims that the evidence shows Flores Pavon's death was an accident, not intentional. In the alternative, he argues that if the evidence is sufficient, it is only sufficient to convict him of murder, which was included in the jury charge as a lesser-included offense. The State responds that Johnson does not contest that he intended to rob Flores Pavon. And the evidence shows that he asphyxiated her, she suffered compression to her neck and trunk, and she had injuries to her upper chest and upper back. Also, the State argues that Johnson's actions immediately following the offense support the jury's verdict.

## A.     Standard of Review

Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence. *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979)). When assessing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally

justified in finding guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Witcher v. State*, 638 S.W.3d 707, 709–10 (Tex. Crim. App. 2022). Further, an appellate court is required to defer to the jury's credibility and weight determinations because the jury has the responsibility to judge the witnesses' credibility and the weight assigned to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Witcher*, 638 S.W.3d at 710. An appellate court will consider all evidence when reviewing the sufficiency of the evidence, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or defense. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

## B.    Applicable Law

A person commits the offense of capital murder if he intentionally commits murder in the course of committing or attempting to commit robbery. *See* PENAL § 19.03(a)(2). A person commits murder if he intentionally or knowingly causes the death of an individual. *Id.* § 19.02(b)(1). A person commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property. *Id.* § 31.03(a).

A person acts intentionally, or with intent, when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). Intent to kill is a question of fact determined by the jury from all the facts and circumstances in evidence. *Robledo v. State*, No. 05-20-00109-CR, 2022 WL 2900969, at *3 (Tex. App.—Dallas July 22, 2022, no pet.) (mem. op., not designated for publication). Direct evidence of the elements of the offense, including the culpable mental state, is not required. *See Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). The jury is permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor. *Id.* at 14–15. Circumstantial evidence alone may be sufficient to establish guilt. *Id.* at 15.

Proof of a culpable mental state almost invariably depends on circumstantial evidence. *Robledo*, 2022 WL 2900969, at *3. Intent can be inferred from the extent of the injuries to the victim, the relative size and strength of the parties, or the method used to produce the injuries. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Additionally, the culpable mental state can be inferred from the acts, words, and conduct of the accused. *Patrick*, 906 S.W.2d at 487.

## C. The Evidence Is Sufficient to Support Johnson's Conviction

Johnson admits that he killed and robbed Flores Pavon but disputes that he intended to kill her. He maintains that he intended only to rob her but accidentally killed her, which is murder rather than capital murder. *Compare* PENAL

–7–

§ 19.02(b)(1), (3) (murder) *with* § 19.03(a)(2) (capital murder). However, the jury was instructed on this lesser-included offense of murder in which, while in the course of committing or attempting to commit robbery, a person commits an act clearly dangerous to human life that causes the death of an individual. By convicting Johnson of capital murder, the jury rejected this lesser-included offense.

Johnson also contends the evidence is insufficient to show that he intended to commit murder. The record suggests otherwise. The autopsy revealed that Flores Pavon suffered compression of her neck and trunk and had injuries to her upper back. Also, smothering could not be excluded as a contributory factor. Additionally, there is no evidence that Johnson tried to render aid, called out for help, or called 911. Rather, the evidence shows that he locked the door to Flores Pavon's bedroom from the inside, left her apartment through the patio door, and then sent two text messages to Flores Pavon trying to suggest that they did not meet that day as planned. Afterward, Johnson went to his ex-girlfriend's home and told her that he was going away on a business for a while. Further, at some point, he disposed of Flores Pavon's wallet while driving. Then seven days later, Johnson was apprehended in Huntsville, Walker County, Texas, which is approximately a two-and-a-half-hour drive from Dallas.

To the extent that Johnson challenges the sufficiency of the evidence on the basis of conflicting inferences that may be drawn from the evidence, this is actually an attack on the credibility and weight assigned to the evidence by the jury. We are

required to defer to the jury's credibility and weight determinations. *See Jackson*, 443 U.S. at 319, 326; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

After reviewing the evidence, we conclude that a rational jury could have found that Johnson intentionally murdered Flores Pavon while in the course of committing robbery. Accordingly, we conclude the evidence is sufficient to support Johnson's conviction for capital murder.

Issue one is decided against Johnson.

### III.    Modification of the Judgment

Although neither party raises the issue, we observe that the record reveals errors in the judgment with respect to the defendant's name, the offense for which he was convicted, and by whom his punishment was assessed. An appellate court has the authority to modify an incorrect judgment to make the record speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (adopting the reasoning in *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (en banc)).

The judgment lists the defendant's name as "Jimmy Eugene Johnson." The record shows that the indictment, the reporter's record for the motion-to-suppress hearing, and the jury charge all show that the defendant's name is "Jimmy Eugene Johnson III." Also, when the trial judge arraigned Johnson, he used Johnson's suffix. Further, Johnson lists his name as "Jimmy Eugene Johnson III" in the style

–9–

of his brief on appeal. Accordingly, we conclude the trial court's judgment should be modified to correctly state Johnson's complete name—"Jimmy Eugene Johnson III."

The judgment incorrectly states that Johnson was convicted of "capital murder with terroristic threat." Johnson was indicted for, and the jury convicted him of, capital murder in the course of committing or attempting to commit robbery. *See* PENAL § 19.03(a)(2). Accordingly, we conclude the trial court's judgment should be modified to state that the offense for which Johnson was convicted was capital murder while in the course of committing robbery.

The judgment incorrectly shows that the jury assessed Johnson's punishment. Although Johnson filed a written election to have the jury assess his punishment, the record shows that the jury found Johnson guilty of capital murder and, immediately after receiving their verdict, the trial judge assessed Johnson's mandatory punishment at life imprisonment without the possibility of parole. *See* PENAL § 12.31. Accordingly, the trial court's judgment should be modified to state that, although Johnson elected to have the jury assess punishment, the trial court exercised its duty to assess his mandatory punishment.

Also, in a separate section relating to Johnson's election of who should assess his punishment, the judgment incorrectly states that he elected the jury, which heard evidence as to punishment, the trial court charged the jury as to punishment, and after deliberation, the jury returned its verdict as to punishment. The trial court's

judgment was on a preprinted form (i.e., OCA Standard Judgment Form (Rev. 12/11/2018)) that offered three options with a checkbox for the trial judge to select the appropriate choice. The options were:

**Punishment Assessed by Jury / Court / No election (select one)**

☐ **Jury.** Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and in open court, it returned its verdict as indicated above.

☐ **Court.** Defendant elected to have the Court assess punishment. After hearing the evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election.** Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

However, the record shows that none of the three options are exactly applicable to this case. Johnson filed a written pretrial election for the jury to decide his punishment in the event that he was found guilty. However, after the jury found Johnson guilty of capital murder, the trial judge immediately assessed his punishment at the mandatory sentence of life without the possibility of parole without hearing evidence relative to the question of punishment. *See* PENAL § 12.31. Accordingly, the trial court's judgment should be modified to accurately state what occurred in this case.

## IV. Conclusion

The evidence was sufficient to support Johnson's conviction. Also, the trial judge erred when he signed a judgment with errors in it.

We modify the trial court's judgment as follows:

- "<u>Offense for which Defendant Convicted</u>: Capital Murder with Terroristic threat" is modified to read "<u>Offense for which Defendant Convicted</u>: Capital Murder while in course of Robbery."

- "<u>Punishment Assessed by:</u> Jury" is modified to read <u>Punishment Assessed by:</u> "Court."

- "<u>Punishment Assessed by Jury / Court / No election (select one)</u> ☒ Jury. Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and in open court, it returned its verdict as indicated above."

  is modified to read

  "<u>Punishment Assessed by Jury / Court / No election (select one)</u> ☒ Jury. Defendant entered a plea and filed a written election to have the jury assess punishment. ~~The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and in open court, it returned its verdict as indicated above.~~

  ☒ Court. ~~Defendant elected to have the Court assess punishment.~~ After hearing the evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The trial court's judgment is affirmed as modified.

*See* TEX. R. APP P. 43.2(b).

–12–

Finally, we note that it is incumbent on the trial judge to sign, and the district clerk's office to issue, judgments that properly reflect what occurred in any given case. *See* CRIM. PROC. arts. 42.01 (setting out required provisions of criminal judgment). It is also incumbent on the counsel to review judgments for any errors and seek to correct such errors while the trial court retains plenary power so that accurate judgments are prepared. This Court should not be tasked with correcting trial court judgments time and time again.

The trial court is directed to prepare a corrected judgment that reflects the modifications made in this Court's opinion and judgment in this case. *See Shumate v. State*, 649 S.W.3d 240, 244–45 (Tex. App.—Dallas 2021, no pet.).

The trial judge is also directed: (1) to order the district clerk to prepare and file a supplemental clerk's record containing the corrected judgment with this Court; (2) to provide the corrected judgment to the parties; and (3) to send the corrected judgment to the Texas Department of Criminal Justice.

/Emily Miskel/

220858f.u05
Do Not Publish
TEX. R. APP. P. 47

EMILY A. MISKEL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

JIMMY EUGENE JOHNSON III,
Appellant

No. 05-22-00858-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F20-00068-L.
Opinion delivered by Justice Miskel. Justices Reichek and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

- "Offense for which Defendant Convicted: Capital Murder with Terroristic threat" is modified to read "Offense for which Defendant Convicted: Capital Murder while in course of Robbery."

- "Punishment Assessed by: Jury" is modified to read Punishment Assessed by: "Court."

- "Punishment Assessed by Jury / Court / No election (select one) ☒ Jury. Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and in open court, it returned its verdict as indicated above."

  is modified to read

  "Punishment Assessed by Jury / Court / No election (select one) ☒ Jury. Defendant entered a plea and filed a written election to have the jury assess punishment. ~~The jury heard evidence~~

relative to the question of punishment. ~~The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and in open court, it returned its verdict as indicated above.~~

☒ Court. ~~Defendant elected to have the Court assess punishment.~~ After hearing the evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

As **MODIFIED**, the judgment is **AFFIRMED**.

The trial court is **DIRECTED** to prepare a corrected judgment that reflects the modifications made in this Court's opinion and judgment in this case.

The trial judge is also **DIRECTED**: (1) to order the district clerk to prepare and file a supplemental clerk's record containing the corrected judgment with this Court; (2) to provide the corrected judgment to the parties; and (3) to send the corrected judgment to the Texas Department of Criminal Justice.

Judgment entered this 16th day of October, 2024.